THE PEOPLE, *ex rel.* Richard Gambling, *vs.* THE BOARD OF POLICE FOR THE METROPOLITAN POLICE DISTRICT.

The act of April 15, 1857, establishing a metropolitan police district, provided that the mode of trial of policemen and their removal from office, should be particularly defined and prescribed by the rules of the board; and that no person should be removed except upon written charges, and after an opportunity should have been afforded him of being heard in his defense. The board adopted rules, pursuant to the act, providing that charges preferred must be in writing, sworn to, &c., unless made by a member of the board, or superintendents or inspectors, and that the accused should have two days' notice to examine the charges and make answer to them, after which a trial might be had at any meeting of the board, of which the accused had been advised, *Held* that where charges against a policeman were preferred by an individual who was not a commissioner or a superintendent or inspector, notice of the charges, and of the time and place of trial, should have been given to the accused personally. And that upon charges not sworn to, and in the absence of any proof that notice was given to the accused to call and examine the charges, and upon a notice of trial, not served personally, but left at the station house, no time or place of trial being specified therein, the board had no power or authority to remove the accused.
When a statute prescribes the mode of acquiring jurisdiction, the mode pointed out must be complied with, or the decision will be a nullity.
A *certiorari* to review the proceedings of the board of police. in removing a policeman, is the appropriate remedy for the party aggrieved.

CERTIORARI, to review the decision of the board of police for the metropolitan police district, removing the relator from the office of policeman. The defendants having made their return to the certiorari, it was referred to a referee to take proof of the facts and circumstances and to report the same to the court, with his opinion thereon. From the report of the referee it appeared that on the 19th of June, 1857, William Sutherland, jun., a policeman, and acting as special aid to the deputy superintendent of the police department, caused to be served upon the relator personally, a notice in writing, requiring the relator to report himself for patrol duty, at the station house, Knickerbocker Hall, corner of 23d street and 8th avenue, at sunset of that day. That the relator did not report himself according to the requirement of said notice. That on the night of the 19th or morning

of the 20th of said month of June, he presented charges in writ-ing against the relator and others, by which he suspended them from pay and duty on the charge of willful disobedience of orders. Specification, that on the 19th of June, they refused to report for their respective duties, as per order of that day. The referee further reported that on the 20th of June a notice in writing, directed to the relator, signed by George W. Em-bree, chief clerk of the said police commissioners, stating that said Sutherland had made complaint against him, Gambling, for willful disobedience of orders and insubordination, with a specification that he (Gambling) refused to obey the orders of his superior officer on the 19th day of June, 1857, was made out and given among many other notices, to Stephen John, a patrolman, to be served; that said John did not serve the same upon the said Gambling personally, but left the said notice with captain John D. McKee, who had been appointed captain of the 16th precinct, by the former police commission-ers, and was then acting as such officer, under whose command the said Gambling then was. That said Captain McKee refused to recognize the metropolitan police commissioners as a legally constituted body, and for that reason did not deliver said notice to Gambling, the relator. That said Gambling did not re-port himself to the superintendent of the metropolitan police commissioners for duty as a patrolman, until after the 23d day of June last. That said Gambling had been ill and off duty, from about the 1st day of April, until after the 23d day of June, 1857. That the only rules and regulations adopted by the metropolitan police commissioners, which re-late to the subject of charges against members of the police and notices of such charges and trial, are the sixth and seventh rules, which are as follows: 6th. * * * "Charges preferred against any member of the police force must be in writing, and sworn to or affirmed to, with the name and resi-dence of the complainant, and if stated on information or belief, then the source of such information, and the reason of such belief, shall also be stated. But this shall not apply to

complaints or charges by any commissioner, or the general or deputy superintendents or inspectors, who may charge simply in writing. All such charges must be filed with the chief clerk." 7th. " When charges are filed, the chief clerk shall notify the person complained of to call and examine the same; and the person complained of, within two days thereafter, must either dictate answers thereto to the chief clerk, to be by him taken down, or he may prepare the same in writing within the same time and file them; The trial thereof shall be in order at any subsequent meeting of the board, of which the person complained of shall be advised. But the person complained of may waive such trial, and submit his case, and answer upon affidavits, after two days' notice has been given by the chief clerk to the complainant of such waiver, and opportunity within such time, for such complainant to produce witnesses for deposition before such chief clerk, or to furnish affidavits otherwise in support of this complaint."

Upon the charges thus presented, the relator was dismissed and removed from office by the commissioners, by an order indorsed on the back of the charges, and signed by them.

*Luman Sherwood* and *Gilbert Dean,* for the relator.

*D. D. Field,* and *Wm. Curtis Noyes,* for the defendants.

*By the Court,* DAVIES, P. J. The return to the writ of certiorari in these cases and others, brings up the question whether the relators have been legally dismissed as policemen of the city of New York. They were duly and legally appointed under the act of April 13, 1853. (*Laws of* 1853, *ch.* 228.) By section 2 of article 3 of that act, it was declared that the members of the police department, appointed after this act shall have gone into effect, shall hold their offices during good behavior, and shall only be removed for cause as hereinafter provided." Section 4 of the same article prescribes the mode of removal. Notice to the accused was to be

given, to afford him an opportunity to be heard in his de-
fense.   The accused party might in all cases appear by coun-
sel, and compel the attendance of witnesses in his behalf.
The commissioners were to examine witnesses under oath, and
the testimony in such case was to be reduced to writing, and
the decision filed with the common council.

The act of April 15, 1857, (*Laws of* 1857, *ch.* 569,) estab-
lished a metropolitan police district, and provided for the
government thereof.  By this act a board of commissioners
were appointed, who were to have the government and man-
agement of the police within the district.   The quota of pa-
trol force for the county of New York was to be the number
of patrolmen then existing by law in the city of New York.
Section 7 of this act declares that the qualifications, enumer-
ative and distributive, of duties, *mode of trial,* and removal
from office, of each officer of the police force, shall be partic-
ularly defined and prescribed by rules and regulations of the
board of police; and that no person shall be removed there-
from except upon written charges preferred against him to
the board of police, and after an opportunity shall have been
afforded him of being heard in his defense.   Section 32 of
this act declares that the police of the city of New York, af-
ter the first meeting of the board of police, (which was on
April 23, 1857,) should hold office and do duty under the pro-
visions of that act, "and as members of the police force of the
metropolitan district hereby constituted."

In pursuance of the authority thus conferred, the board of
police adopted rules and regulations relating to the mode of
trial and removal from office of members of the police force.
Rule sixth provides that charges preferred against any mem-
bers of the police force must be in writing, and sworn to or af-
firmed to, with the name and residence of the complainant.   If
stated to be on information and belief, then the source of such
information, and the reason of such belief, shall also be stated.
But this was not to apply when charges were preferred by
any commissioner, or the general or deputy superintendents

or inspectors, who might charge simply in writing. All such charges must be filed with the chief clerk. Rule seventh prescribes that when charges are filed, the chief clerk shall notify the person complained of, to call and examine the same, and the person complained of, within two days thereafter, must either dictate answers thereto to the chief clerk, to be by him taken down, or he may prepare the same in writing, within the same time, and file them. The trial thereof shall be in order at any subsequent meeting of the board, of which the person complained of shall be advised.

In the cases before us, the charges were in no instance preferred by a commissioner, or by a general or deputy superintendent, or by an inspector; and the charges in no instance were sworn or affirmed to. There is no evidence that any notice was given to any of the relators to call and examine the charges preferred, or that they had any opportunity for such examination. Notice of trial, on charges, was left at the station houses of the various wards, but no time or place of trial was specified therein; and there is no evidence that knowledge of such time and place, or of such charges, ever came to the relators.

For the reasons given by Justice Davies in the case of McDermott against these defendants,(*a*) we are of the opinion that notice of such charges, and of the time and place of trial, should have been given to the relators personally, so that they might have had an opportunity of being heard in their defense.

When a statute prescribes the mode of acquiring jurisdiction, the mode pointed out must be complied with, or the proceeding will be a nullity. (*Bloom* v. *Burdick*, 1 *Hill*, 130. *Stanton* v. *Ellis*, 2 *Ker.* 575.)

Notice of the charges preferred against the relators, and notice of the time and place of trial thereon, not having been given to them in conformity to law, the defendants had no ju-

(*a*) 25 Barb. 635. 5 Ab. 422.

risdiction over them, and their order of removal, depriving them of the office of policemen, was unauthorized, and cannot be maintained. The office of policeman, as created by the act of 1853, and continued by that of 1857, *is* not a political office, subject to change and removal, at the will of the appointing power. The commissioners of police under the act of 1853, as well as the defendants under the act of 1857, in proceeding to the trial and removal of policemen, act in a quasi judicial capacity. The reasons or causes of removal are not subjects of review. If they have jurisdiction, the motives of their action, or the sufficiency of the causes for removal, are not to be questioned here.

That a certiorari to review these proceedings is the proper and appropriate remedy, admits, we think, of no serious question. It lies to review the proceedings of canal appraisers who have appraised the damages of an individual without giving him an opportunity to be heard, or to produce testimony. (*Fonda* v. *Canal Appraisers*, 1 *Wend.* 288.) It also lies to review the proceedings of courts martial. (*Rathbun* v. *Sawyer*, 15 *Wend.* 451.) It was granted, and proceedings before a special officer set aside, on the ground that he had not acquired jurisdiction, in the case of *The People* v. *Reed*, (5 *Denio*, 554.) And this court, in the *Matter of Bruni*, (1 *Barb.* 193,) set aside the proceedings had before a justice, on the ground of want of jurisdiction.

We are therefore of opinion that the proceedings had by the defendants for the removal and dismissal of the relators, as policemen, are void for want of jurisdiction, and should be set aside.

[NEW YORK GENERAL TERM, February 1, 1858. *Davies, Clerke* and *Sutherland*, Justices.]